IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CLARISSA J. SWENSON,

    **Plaintiff,**

v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

Case No. 16-1354-JAR

## MEMORANDUM AND ORDER

Plaintiff Clarissa J. Swenson seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for both disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[1] Plaintiff alleges error with regard to the Administrative Law Judge's ("ALJ") assessment of her residual functional capacity ("RFC"). Because the Court finds that Defendant Commissioner's findings are not supported by substantial evidence, the Court reverses and remands Defendant's decision.

**I.**    **Procedural History**

Plaintiff applied for disability insurance benefits on June 25, 2013. She also filed a Title XVI application for supplemental security income on June 27, 2013. Both applications alleged an onset date of December 28, 2012. The Commissioner denied Plaintiff's applications upon initial review and upon consideration. Plaintiff timely requested a hearing before an ALJ. She appeared and testified at a hearing before ALJ Susan W. Conyers on November 3, 2014.

---

[1] 42 U.S.C. §§ 401–434, 1381–1383f.

The ALJ issued an unfavorable decision against Plaintiff on January 15, 2015. She concluded that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and Plaintiff timely filed an appeal with this Court pursuant to 42 U.S.C. § 405(g).

## II. Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the Court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III. Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6] The

---

[2] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[3] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[4] *White*, 297 F.3d at 905 (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] 42 U.S.C. §§ 423(d)(1)(A); 416(i).

[6] *Id*. § 423(d)(2)(A).

Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[8]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. She determined at step two that Plaintiff has the following severe impairments: degenerative disease of the lumbar spine and scoliosis, lumbago, chronic kidney disease (stage III), and myalgias. She determined at step three that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1. She determined at step four that Plaintiff was unable to perform her past relevant work (statement clerk, gas station manager, home health aide, and waitress). At step five, she determined that Plaintiff has the RFC to perform light work except:

> occasionally climb ramps and stairs, but should avoid the climbing of ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch and crawl; avoid extreme cold and vibration. She will be off work one-half day per month related to her physical condition.[9]

Plaintiff challenges the ALJ's step two and RFC determinations, arguing the ALJ erred by: 1) failing to consider fibromyalgia as one of her severe impairments; 2) giving substantial weight to Dr. Geis's opinion yet disregarding his opinion that Plaintiff had severe fibromyalgia; 3) giving little weight to a treating nurse's opinion that Plaintiff's fibromyalgia rendered her disabled; 4) concluding her mental impairments were nonsevere; and 5) presenting erroneous reasons to find Plaintiff not entirely credible.

---

[7] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[8] *Id*.

[9] R. at 160.

3

## IV. Discussion

### A. Fibromyalgia

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue."[10] "It is a chronic condition, causing 'long-term but variable levels of muscle and joint pain, stiffness[,] and fatigue.'"[11] The Tenth Circuit has said that fibromyalgia is a disease "poorly-understood within much of the medical community."[12]

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are pain all over, fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.[13]

Plaintiff contends that the ALJ erred by failing to consider her fibromyalgia, a severe, medically determinable impairment ("MDI"). She claims that this failure infected the ALJ's credibility and limitations analysis. Defendant argues the ALJ reasonably did not find medically determinable fibromyalgia given: 1) Dr. Decker's fibromyalgia testing and diagnosis was not done during the relevant period; 2) more current relevant records indicated myalgia and successful treatment with medication; 3) Dr. Henry's finding of normal motor strength; and 4) Dr. Geis' finding of "fibromyalgia currently improved."[14]

---

[10] *Brown v. Barnhart*, 182 F. App'x 771, 774 n.1 (10th Cir. 2006) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)).

[11] *Id.* (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003)).

[12] *Id.* (quoting *Benecke*, 379 F.3d at 590.).

[13] *Id.* (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)).

[14] R. at 260; Doc. 17 at 11–12.

4

The ALJ made two specific findings regarding fibromyalgia: 1) "[a]lthough the claimant has reported a diagnosis of fibromyalgia, [the treatment records at Prairie Star Health Center and Hutchinson Clinic] generally document myalgia with Lyrica prescribed,"[15] and 2) "[a]lthough the claimant has reported a history of fibromyalgia, the record does not include fibromyalgia testing."[16] The evidence, however, does not support the ALJ's fibromyalgia findings.

First, the ALJ selectively assessed Plaintiff's treatment records at Prairie Star Health Center and Hutchinson Clinic. These records included assessment and treatment of both myalgia and fibromyalgia. Although the treatment provider, Autumn Wilgers, APRN, coded Plaintiff's problem as "myalgia and myositis unspecified," she also included assessment and treatment for fibromyalgia.[17] For example, on December 27, 2012, Plaintiff presented for a follow-up regarding her complaints of pain, depression, and anxiety.[18] She reported having been without medication for a month, experiencing pain all the way down her legs, cramping feet, disturbed sleep due to her pains, anxiety, and depression. Wilgers' assessment included essential hypertension, depression with anxiety, and fibromyalgia.[19] The treatment plan included, *inter alia*, Cymbalta, a drug commonly used to treat depression and fibromyalgia.[20] The ALJ thus erred in her assessment of these records.

The ALJ also ignored that these records included physical and objective findings of fibromyalgia. On February 15, 2013, Wilgers noted: "[t]he lumbar/lumbosacral spine exhibited

---

[15] R. at 161.

[16] R. at 163.

[17] R. at 543, 554, 559-60, and 568.

[18] R. at 559.

[19] R. at 560.

[20] *Id*.; WebMD, http://www.webmd.com/fibromyalgia/guide/cymbalta-for-fibromyalgia-treatment#1 (Cymbalta is an antidepressant used for the treatment of fibromyalgia.) (visited August 9, 2017).

5

abnormalities tender throughout entire spine, worse in lower back."[21] Likewise, on March 14, 2013, Wilgers reported "[t]he thoracic spine showed abnormalities tender and the lumbar/lumbosacral spine exhibited abnormalities tender."[22] On October 10, 2013, Wilgers identified clinical findings and objective signs for Plaintiff's diagnosed conditions as "lumbago, [degenerative disc disease], slow gait, tender spots to shoulders, chest, low back, + straight leg raise."[23] "Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include 'primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body.'"[24] Indeed, Plaintiff's treatment notes repeatedly referenced her pain, as well as prescribed medications for pain, such as Morphine, Percocet, Lortab, Flexeril, Cymbalta, Lyrica, Amitriptyline, Tramadol, and Savella. They also repeatedly documented that Plaintiff experiences pain in various parts of her body, back, shoulders, and legs, as well as dizziness, migraines, difficulty in sleeping, fatigue, multiple tender spots, and depression.

Second, the reason why the record at the time of the ALJ's decision did not include fibromyalgia testing was due to the ALJ's discounting of Plaintiff's testimony regarding diagnosis. Plaintiff testified that Dr. James Decker diagnosed her with fibromyalgia sometime in in 2007.[25] The ALJ erred by not expanding the record to obtain Dr. Decker's records before issuing her decision.[26] Dr. Decker's records show he examined Plaintiff's tender points on

---

[21] R. at 554.

[22] R. at 550.

[23] R. at 588.

[24] *Brown v. Barnhart*, 182 F. App'x 771, 774 n.1 (10th Cir. 2006) (quoting *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003)).

[25] R. at 195.

[26] *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996) ("An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing."); *North*

6

September 4, 2007, and found at least 18 different areas of tenderness.[27] Based on those findings, Dr. Decker diagnosed Plaintiff with fibromyalgia and prescribed Cymbalta to help with her depression and fibromyalgia.[28] He treated Plaintiff for various problems, including fibromyalgia, until April 2011.[29] The current record thus directly contradicts the ALJ's findings of no fibromyalgia testing and no fibromyalgia diagnosis.

The ALJ therefore erred by not according severe-MDI status to Plaintiff's fibromyalgia. Even Dr. Geis, the state-agency medical consultant, accorded severe-MDI status to Plaintiff's fibromyalgia, yet the ALJ inexplicably disregarded this finding, despite giving Dr. Geis' opinion substantial weight.[30]

### B. Nurse Wilgers' Opinion

Plaintiff argues that having failed to consider her fibromyalgia as a severe-MDI, the ALJ erroneously discounted Wilgers' opinion that Plaintiff would be unable to sustain competitive employment.[31] Wilgers opined that Plaintiff would likely miss work four or more times a month, was limited to lifting less than 10 pounds frequently, could sit about 2 hours and stand or walk about 2 hours in an 8 hour day, and could never twist, stoop, climb, crouch, crawl, pull, push, work overhead, or walk up an incline.[32] The ALJ gave "little weight" to Wilgers' opinion

---

*v. Colvin*, Case No. 13-1372-JAR, 2015 WL 197369, at *4 (D. Kan. Jan. 14, 2015) (finding ALJ should have expanded the record to obtain records to support the plaintiff's statement that she had been diagnosed with fibromyalgia years ago).

[27] R. at 793. Plaintiff submitted Dr. Decker's records to the Appeals Council on April 21, 2016, after the issuance of the ALJ decision. R. at 749. *See O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (holding that "new evidence becomes part of the administrative record to be considered when evaluating the [Commissioner]'s decision for substantial evidence"); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (same).

[28] R. at 793.

[29] R. at 764-66, 769, 776, 776-78, 785, and 793.

[30] R. at 256.

[31] R. at 589, ¶ 14.

[32] R. at 590–93.

7

because: 1) she provided extreme limitations despite giving a good prognosis; 2) the limitations were not reflected in her treatment notes; 3) her opinion appeared to be based solely upon Plaintiff's subjective complaints; and 4) her referrals for various tests resulted in normal or unremarkable results.

The Court finds the ALJ's assessment of Wilgers' opinion flawed. First, the relationship between prognosis and limitations are not necessarily direct. A person may have a severe limitation, but may improve with treatment, supporting a good prognosis. Second, although Wilgers' assessment relied upon Plaintiff's subjective complaints, she also included clinical findings and objective signs — "lumbago, degenerative disc disease, slow gait, tender spots to shoulders, chest, low back, + straight leg raise."[33] Thus, Wilgers' RFC assessment was not based solely on Plaintiff's subjective complaints. Even if it was, her assessment should not be rejected for that reason. As discussed above, symptoms for fibromyalgia are generally subjective. And it is common for fibromyalgia sufferers to have normal muscle strength, sensory functions, reflexes, and lab results.[34] Discounting Wilgers' opinion for this reason indicates a fundamental misunderstanding of fibromyalgia.[35]

Moreover, to the extent the ALJ suggests that Wilgers provided a disabled opinion because Plaintiff asked her to complete the RFC questionnaire, the Court finds no basis for that

---

[33] R. at 588, ¶ 7.

[34] *Moore v. Barnhart*, 114 F. App'x 983, 991–92 (10th Cir. 2004) (stating patients with fibromyalgia usually look healthy; their joints, muscle strength, sensory functions and reflexes appear normal).

[35] *Id.* at 992 (finding the ALJ did not properly analyze Dr. McKinney's opinions because the ALJ did not fully understand the nature of plaintiff's diagnosed condition by requiring objective evidence of fibromyalgia); *North v. Colvin*, Case No. 13-1372-JAR, 2015 WL 197369, at *4 (D. Kan. Jan. 14, 2015) (discrediting a plaintiff's complaints of pain, symptoms, and limitations from fibromyalgia because of the lack of clinical evidence indicates a fundamental misunderstanding of fibromyalgia).

8

speculative conclusion.³⁶ Wilgers' treatment notes consistently report that Plaintiff complained of pain in her legs, low back, and feet, as well as migraines, disturbed sleep, and fatigue. And Wilgers prescribed medication for these symptoms. There is simply no evidence that Wilgers answered the questionnaire as a courtesy to Plaintiff.

Because the lack of objective medical evidence is not determinative of the severity of fibromyalgia, the ALJ improperly discounted Wilgers' opinion due to the lack of objective medical evidence. The Court therefore reverses and remands for the Commissioner to reevaluate the medical opinions in light of the diagnosis of fibromyalgia and the case law governing the consideration of fibromyalgia.³⁷

### C. Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and [a court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."³⁸ Furthermore, an ALJ cannot ignore evidence favorable to the plaintiff.³⁹

As support for finding Plaintiff not entirely credible, the ALJ relied upon Plaintiff's activities of daily living to find that there was not substantial evidence to support her allegations of disabling pain and functional limitations. The ALJ found that Plaintiff's daily activities were

---

³⁶ *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (finding the ALJ improperly rejected treating physician opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was "an act of courtesy to a patient.").

³⁷ *Hollinger v. Colvin*, No. 13-1468-KHV, 2015 WL 2449581, at *8 (D. Kan. May 22, 2015) (finding the ALJ improperly discounted nurse practitioner's opinion regarding limitations due to fibromyalgia because of the lack of objective medical evidence).

³⁸ *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations and citations omitted).

³⁹ *Id.* at 390.

9

not significantly limited because she was able to live alone and care for herself, pets, and her home. She cooks and does the light housekeeping chores. Although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations,[40] the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.[41] Moreover, the ALJ may not ignore the qualifications and limitations Plaintiff reported. Although the ALJ noted that Plaintiff reported her children dropped by daily to do heavier tasks such as vacuuming, bathing the dog, scrubbing, and grocery shopping, she assigned no significance to Plaintiff's need for assistance. But her children's help was so necessary that when her children were unable to assist her for a month, Plaintiff traveled to Minnesota where her mother could help her that month.[42] The ALJ inexplicably mischaracterized the trip to Minnesota as vacation. In the present case, any reliance on Plaintiff's "daily activities" to undercut her allegation of pain is misplaced. Plaintiff's lifestyle does not contradict a claim of disabling pain.

The ALJ also noted several inconsistencies in Plaintiff's testimony to support her incredibility finding. But the ALJ's assessment ignored pertinent testimony. For example, the ALJ first pointed out that Plaintiff had reported that her children do the shopping, but she also reported the ability to get out, shop, drive, and handle her finances. Plaintiff, however, testified that although she can drive, she does not do so very often and limits it to picking up her prescriptions and shopping at the convenience store. Second, the ALJ found Plaintiff's testimony that she is limited to sitting about 15 to 20 minutes, standing about 15 to 20 minutes,

---

[40] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993).

[41] *Krauser v. Astrue*, 638 F.3d 1324, 1332–33 (10th Cir. 2011); *Thompson*, 987 F.2d at 1490.

[42] R. at 187–88.

and walking 1 to 1 ½ blocks inconsistent with her report of walking for exercise and traveling to Minnesota by car. The ALJ, however, ignored Plaintiff's explanation that she made several stops and stayed overnight two nights to get to Minnesota, a trip that normally takes about ten hours by car.[43] The ALJ also ignored Plaintiff's testimony that she "walks [for exercise] on the days that my back doesn't hurt so bad."[44] The ALJ did not ask how often Plaintiff walked for exercise. More surprisingly, the ALJ ignored her own observations at the administrative hearing regarding Plaintiff's ability to sit — "I know you've been having a lot of difficulty sitting still here today. . . I see you fidgeting, and standing, and that's all right."[45]

The ALJ further supported her incredibility finding by noting Plaintiff is not always compliant with her medication and has failed to stop smoking despite repeated advice to do so. Plaintiff correctly recites that before the ALJ may use Plaintiff's noncompliance with prescribed treatment to support an incredibility finding, she must consider the four-part test developed in *Frey v. Bowen*:[46] "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse."[47] The ALJ did not consider all four *Frey* factors and thus may not rely upon Plaintiff's noncompliance with prescribed treatment to undermine her credibility.[48]

---

[43] R. at 187.

[44] R. at 198.

[45] R. at 205.

[46] *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987).

[47] *Id*. at 517.

[48] *Branstetter v. Colvin*, No. 13-CV-1275-DDC, 2014 WL 3700976, at *10 (D. Kan. July 25, 2014) (court refused to affirm the ALJ's findings that plaintiff's limited health treatment affects plaintiff's credibility due to failure to consider *Frey* factors); *King v. Colvin*, No. 12–1116–JWL, 2013 WL 1624826, at *3 (D. Kan. Apr. 15, 2013) (*Frey* test is applicable where an ALJ is evaluating the credibility of the claimant's allegations).

11

The ALJ also supported her incredibility finding by noting Plaintiff's former employer, KAPS Inc., reported that she ended her employment voluntarily due to relocation and not due to impairment. But Plaintiff quit her job at KAPS in July 2012 and did not allege that she was disabled during that time or immediately thereafter. Plaintiff alleged disability upon her termination from her employment with Kroger in December 2012. And Kroger confirmed it terminated her employment for not performing at an acceptable level.[49] Thus, the ALJ erroneously found "[t]he evidence indicates that the claimant had a good work history ending in 2012 due to relocation and not due to impairment."[50]

The Court is well aware that credibility determinations are normally binding.[51] Nevertheless, in the instant case, the ALJ's findings supporting her determinations as to Plaintiff's credibility are often inconsistent with the evidence in the record. As was the case in *Sitsler*,[52] the ALJ in this case mischaracterized the extent of Plaintiff's daily activities, ignoring the numerous qualifications and limitations she consistently reported. The Court will not speculate regarding the impact of this mischaracterization on the ALJ's RFC findings. The Court therefore reverses and remands the decision of the Commissioner. On remand, the Commissioner is directed to properly evaluate the evidence with respect to Plaintiff's credibility, and make new RFC findings after considering Plaintiff's statements regarding the qualifications and limitations in her daily activities.

---

[49] R. at 423.

[50] R. at 164.

[51] *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983).

[52] *Sitsler v. Astrue*, 410 F. App'x. 112 (10th Cir. 2011).

### D. Mental Impairments

The ALJ found "[Plaintiff's] medically determinable mental impairments of depression, considered singly and in combination, do not cause more than minimal limitations in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."[53] In so finding, the ALJ considered the four broad functional areas for evaluating mental disorders and concluded that Plaintiff had no more than mild restrictions for activities of daily living, social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation.[54]

Plaintiff argues that the ALJ erroneously evaluated her mental impairment because: 1) she gave substantial weight to Drs. Fantz and Stern's opinions even though these reviewing physicians did not consider Plaintiff's later treatment records; 2) Plaintiff's Global Assessment of Function ("GAF") scores of 52 and 47 indicate her mental impairment was severe; 3) she did not explain how Plaintiff's termination of treatment at Horizons Mental Health mitigated her low GAF scores; and 4) she failed to provide citations to support her finding that mental treatment notes did not indicate significant concerns and that Plaintiff reported "doing well."[55] The Court finds these arguments unavailing.

First, Plaintiff points to nothing in her later treatment records that contradicts Drs. Koeneman, Fantz, and Stern's opinions that Plaintiff's depression was not severe. Besides, the ALJ did consider the later treatment records as she specifically mentioned them in her decision.

---

[53] R. at 159.

[54] *Id*.

[55] Pl.'s Br. at 17-20. Plaintiff reported "doing fairly well" on April 30, 2014, when she saw Dr. Patrick Fluck. R. at 676.

13

Second, GAF scores do not directly correlate to functional limitations or to the severity of a mental impairment.[56] Moreover, the GAF scores cited by Plaintiff are neither uncontroverted nor significantly probative.[57] Dr. Koeneman's examination report, to which the ALJ gave significant weight, assigned Plaintiff a GAF score of 65, contradicting APRN Bagby's score of 47 and Nicole Devaney's (a licensed medical family therapist) score of 52. Neither Bagby nor Devaney indicated how the GAF scores affected Plaintiff's functional abilities, thus their scores lack a narrative explanation from the source, making them not significantly probative of an inability to work.[58] Under these circumstances and because the ALJ is not required to discuss every piece of evidence, the Court finds no error in the ALJ's failure to discuss the GAF scores in detail.[59]

Plaintiff has not provided any medical source opinion that her mental impairments would have more than a minimal impact on her ability to do basic work activities. By contrast, the ALJ relied on the medical opinion of Dr. Koeneman that Plaintiff is able to interact adequately with co-workers and supervisors, is able to understand simple and intermediate instructions, and has intact concentration.[60] The ALJ also relied on the opinions of the state agency medical consultants, Drs. Fantz and Stern, that her limitations in the functional areas were only mild or

---

[56] *Drummond v. Astrue*, 895 F. Supp. 2d 1117, 1132 (D. Kan. 2012).

[57] *See Luttrell v. Astrue*, 453 F. App'x. 786, 792 (10th Cir. 2011) (stating ALJ's failure to consider GAF scores that were neither uncontroverted nor significantly probative did not merit reversal).

[58] *See Jackson v. Astrue*, No. CIV A 08-2157-CM, 2008 WL 5046378, at *5 (D. Kan. Nov. 24, 2008) (explaining that GAF score might be based upon social functioning rather than occupational functioning based on notes indicating that claimant had no friends and described himself as a hermit).

[59] *Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1154 (D. Kan. 2011) ("The record must demonstrate that the ALJ *considered* all of the evidence, but he is not required to *discuss* every piece of relevant evidence.") (emphasis in original).

[60] R. at 570–72.

none, and therefore did not constitute a severe impairment.[61] For these reasons, the Court finds that the ALJ's determination that Plaintiff's mental impairments are not severe is supported by substantial evidence. However, because this case is being remanded for other reasons, Plaintiff will have an opportunity to obtain medical source evidence that her mental impairments would have more than a minimal effect on her ability to do basic work activities.

## V. Conclusion

Remand is necessary for the ALJ to consider all of the evidence relevant to Plaintiff's RFC assessment (including that evidence provided to the Appeals Council and any evidence which might be developed on remand), follow the proper legal standards in evaluating Plaintiff's pain testimony, including SSR 96-7p and the factors for evaluation of pain testimony as required by the Tenth Circuit in *Luna v. Bowen*,[62] properly evaluate the medical source opinions (stating the weight accorded each opinion and why), and assess Plaintiff's RFC in light of all of the relevant evidence. The Court does not intend by this opinion to suggest the result that should be reached on remand.

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED.**

Dated: August 10, 2017

 S/ Julie A. Robinson
 JULIE A. ROBINSON
 UNITED STATES DISTRICT JUDGE

---

[61] Ex. 3A, R. at 225–31; Ex. 7A, R. at 251–63.

[62] 834 F.2d 161, 164–66 (10th Cir. 1987).